CLAY ET AL. *v.* HAMILTON

[No. 17,373.   Filed November 2, 1945.]

*R. F. Davidson,* of Danville, and *Royse and Travis,* of Indianapolis, for appellants.

*Stevenson & Kendall,* of Danville, for appellee.

HAMILTON, J.—This is an appeal from a final judgment rendered in proceedings supplemental to execution. The action was instituted by appellee (the former wife of one Earl Higgins) by filing a complaint wherein she seeks to reach certain income from assets held by the appellant, Charles Clay, Trustee in trust for the benefit of Earl Higgins, and have the same applied in satisfaction of an alimony judgment which appellee recovered against the said Earl Higgins in 1923, at the time she was granted a divorce. The facts giving rise to the litigation are as follows: William T. Higgins died testate in Hendricks County, Indiana, in 1920. Item 5 of his last will and testament reads as follows:

"Item 5. I will, devise and bequeath to my friend Lewis W. Borders, of Danville, Indiana, as trustee and to his successor the following described real estate in Hendricks County, Indiana, to-wit: The East ½ of the North East ¼ and the East ½ of the North West ¼ and the South ½ of the West ½ of the North East ¼ all in section 33, Township 16 North, Range 2 West, estimated to contain 200 acres more or less, to be managed and controlled and held in trust for the use and purposes as hereinafter provided: If my son Earl Glendon desires to live on said farm and cultivate the same then I direct the said trustee permit my said son Earl Glendon to occupy the same, he the said Earl to pay the taxes and keep up the improvements on said farm, paying only such additional sum therefor as shall be necessary to continue this trust. In the event my said son Earl Glendon Higgins does not desire to occupy said farm under these conditions then said trustee is directed to rent the said farm to the best advantage both for the benefit of the farm and for my said son, and after paying the tax and keep up the improvements on said farm and paying the costs and expenses of the trust, then said trustee is to pay the balance of the income from said farm to my said son Earl Glendon Higgins each year, providing the said Earl Glendon Higgins does not assign set over or attempt to convey his

rights herein, in which event said trustee is to at once convey said real estate to the legal heirs of my son Oscar Higgins. If the said Earl Glendon Higgins accepts the terms of this trust then he is to receive the use or the net income from said farm for and during his life and at his death said property is to become the absolute property of the legal heirs of my son Oscar Higgins.

"In the event my friend Lewis W. Borders should fail or cease to act as trustee herein then I authorize the Judge of the Hendricks Circuit Court to appoint a trustee to carry out the provisions of this Item of my will.

"My first purpose is to give to my said son Earl Glendon Higgins the income each year from this land without any right for or in him to dispose of the same in advance but to keep the same as an annual income for his better support."

Item 1 of the codicil to said will is as follows:

"Item One. I now revoke and modify Item Four of said Will and instead thereof I will and bequeath to my son Oscar Higgins one-half (½) of the remainder of my personal property of the other one-half (½) thereof I will and bequeath to Lewis W. Borders, Trustee, and to his successors to be by him managed and handled for the best interest of my son Earl Glendon Higgins, and I direct said trustee to buy and purchase a small tract of land adjoining the other real estate put in trust or near thereto with improvements and hold the same in trust for the use and benefit of my said son as the other real estate devised in my will is to be held and in the event a purchase cannot be made for a reasonable price, then I direct my said trustee or his successor to cause to be erected a suitable building on the real estate, devised to said trustee for the use and benefit of my said son, to cost not to exceed the amount of personal that shall come into his hands. This I do to insure my said son Earl Glendon to have a home in which to live and to make a living, if he shall so choose.

"In all other respects I reaffirm the provisions contained in my last Will and Testament."

At the time of the death of the testator in 1920, his son, Earl Higgins, was married to appellee and they were living on the farm. In January, 1923, appellee was granted a divorce from the said Earl Higgins by the Hendricks Circuit Court, and as a part of the decree of divorce, she was awarded alimony in the sum of $1473.00. Nothing was ever paid upon this judgment, except the sum of $4.00. Thereafter, in 1943, execution was issued upon the judgment by leave of the court and returned unsatisfied. Thereupon this action was instituted pursuant to the provisions of §§ 2-4401 to 2-4406, inclusive, Burns' 1933 (Supp.), to reach and apply in satisfaction of said judgment the income accruing in the hands of the trustee from the assets in the trust *res*. The evidence disclosed that, prior to 1923, Earl Higgins lived on the farm described in his father's will and operated the same; that since 1923 he has not lived on or operated said farm and the same has been managed and operated by a trustee pursuant to the trust arrangement created in Item 5 of his father's will. The defendant, Earl Higgins, a nonresident, was called and defaulted and the cause was submitted for trial to the court, which resulted in a finding by the court that Earl Higgins was indebted to appellee in the sum of $3374.86, due and unpaid upon the judgment above mentioned; that appellant Charles Clay, Trustee, had in his hands funds belonging to Earl Higgins from which funds said trustee was obligated to pay to Earl Higgins the net proceeds in each year; that such net proceeds was the property of Earl Higgins and was not exempt from execution, either in the hands of Earl Higgins or of the trustee as against appellee's judgment. The court further found that appellee is entitled to have one-half of the net proceeds arising each year from said trust applied to the payment of said judgment and such pay-

ments should be made by the trustee each year to the Clerk of the Hendricks Circuit Court to be applied upon said judgment, said payments to be made on or before January 15, 1945, from the net proceeds of 1944, and thereafter on each January 15 until the judgment is fully satisfied. Judgment was rendered accordingly.

Appellant Charles Clay, Trustee of Earl Higgins, filed a motion for a new trial based upon two grounds: (1) That the decision of the court is not sustained by sufficient evidence; and (2) that the decision of the court is contrary to law. The motion for a new trial was overruled and this appeal perfected.

Appellee has filed a motion to dismiss this appeal for the reason that appellant Charles Clay, Trustee of Earl Higgins, does not have an appealable interest in the subject matter of the litigation, which is affected adversely by the ruling and judgment of the trial court. Appellee asserts that it is the established rule in Indiana that, in order for a party to be entitled to appeal from a final judgment, it must appear that he has a substantial interest in the subject matter of the litigation and that he is prejudiced or aggrieved from the judgment or decree from which he seeks to appeal. We agree that this is the general rule in this state. *Ansel* v. *Kyger* (1915), 60 Ind. App. 259, 110 N. E. 559; *Hetzell* v. *Morrison* (1945), 115 Ind. App. 512, 60 N. E. (2d) 150; *Knapp, Rec.* v. *National Building & Loan Ass'n.* (1937), 212 Ind. 217, 7 N. E. (2d) 938.

Appellee argues that appellant Charles Clay, Trustee of Earl Higgins, is neither prejudiced or aggrieved in law by the judgment and decree of the trial court; that the fact the court ordered said trustee to pay one-half of the net income of the trust funds in his hands yearly to the Clerk of the Court is of no legal interest to the

trustee; that the trustee is a mere custodian of the trust funds, subject to the order and direction of the court and as such custodian he has no right in the funds which is in any way affected by the judgment and order of distribution; that the only person aggrieved by the judgment and entitled to appeal is Earl Higgins and he is not appealing from the judgment.

The record discloses that this was an adversary proceedings instituted by appellee filing a complaint in the lower court against appellant Charles Clay, Trustee of Earl Higgins, and Earl Higgins; summons was issued and served upon said defendant trustee, and he was brought into court to stand trial. Trial was had and the court rendered final judgment against said defendant, determining the rights of the parties in said trust funds, including judgment against the appellant trustee for the costs of the action. The appellant is charged with the duty and is interested in carrying out the provisions of the will. The judgment compels him to do otherwise. Upon such a state of facts, we hold that appellant has an appealable interest and that appellee cannot now be heard to say that said trustee is not a party in interest and has no right to appeal. *Renner* v. *Ross, Administrator* (1887), 111 Ind. 269, 270, 12 N. E. 508; *Clearspring Township* v. *Blough* (1909), 173 Ind. 15, 21, 88 N. E. 511; *Rottger, Rec.* v. *First-Merchants Nat. Bank* (1934), 98 Ind. App. 139, 194 N. E. 267. The motion to dismiss is overruled.

The error relied upon for reversal is the alleged error in overruling the motion for a new trial.

Appellant's contention is based upon two propositions, to-wit: That by the express provisions of Item 5 of the last will and testament of William T. Higgins a "spendthrift trust" was created for the support and maintenance of Earl Higgins and that all funds be-

longing to said trust are exempt from seizure by his creditors, including the appellee upon her judgment for alimony; (2) that even if the net income is not exempt from seizure under proceedings supplemental to execution in payment of appellee's judgment for alimony, § 2-4406, Burns' 1933 (Supp.), expressly limits the amount of recovery in each calendar year to 10% of the net income and for this reason the decision of the court is contrary to law and the judgment must be reversed.

Appellee insists that: (1) The language contained in Item 5 of the last will and testament of William T. Higgins is insufficient to create a "spendthrift trust" and that the trust thereby created is a "trust for support," the net income of which trust becomes the absolute property of Earl Higgins each year and is subject to proceedings supplemental to execution in satisfaction of appellee's judgment for alimony; (2) that appellant has waived any error in respect to the judgment of the trial court in ordering 50% of the net income applied to the satisfaction of appellee's judgment for the reason that appellant failed to file a motion to modify the judgment because the judgment as rendered gave appellee greater relief than she was entitled to receive under the law; and (3) that appellant's motion for a new trial did not contain a specification in conformity with Clause 5, § 2-2401, Burns' 1933, § 368, Baldwin's 1934, namely: Error in the Assessment of the Amount of Recovery, the same being too large.

We do not deem it necessary to define or discuss the difference and distinction between a "spendthrift trust" and a "trust for support" or determine within which class the trust involved herein falls for the reason that in either case the conclusion must be the same.

Referring to Item 5 of said will, we find that the testator provided:

"In the event my said son Earl Glendon Higgins does not desire to occupy said farm under these conditions then said trustee is directed to rent the said farm to the best advantage both for the benefit of the farm and for my said son, and after paying the tax and keep up the improvements on said farm and paying the costs and expenses of the trust, *then said trustee is to pay the balance of the income from said farm to my said son Earl Glendon Higgins each year,* . . . . If the said Earl Glendon Higgins accepts the terms of this trust *then he is to receive the use or the net income from said farm for and during his life* . . . ."

"My first purpose is to give to my said son Earl Glendon Higgins the income each year from this land without any right for or in him to dispose of the same in advance but to keep the same as an annual income for his better support." (Our italics.)

It will be noted that, according to the directions stated in the will, the trustee is required to pay to the beneficiary each year the net income from said farm. There are no restrictions as to how Earl Higgins may spend the funds after they are paid to him by the trustee. The restrictions against alienation apply only to transfers by Earl Higgins made in advance and before the net income is determined or ready to be paid to the beneficiary by the trustee. Upon such facts we believe that the law applicable thereto is clearly stated in § 154 of the Restatement of the Law of Trusts as follows:

"*Trusts for Support.* Except as stated in §§ 156 and 157, if by the terms of a trust it is provided that the trustee shall pay or apply only so much of the income and principal or either as is necessary for the education or support of the beneficiary, the beneficiary cannot transfer his interest and his creditors cannot reach it.

"*Where amount not limited to education and support.* The rule stated in this Section is not applicable where the amount to be paid or applied by the

224

trustee is a specified sum or is not limited to what is necessary for the education and support of the beneficiary, although by the terms of the trust it appears that the settlor's motive in creating the trust is to provide for the education or support of the beneficiary. If by the terms of the trust the trustee is under a duty to pay to the beneficiary or to apply for his benefit the whole or a fixed part of the income or principal or a fixed amount from the income or principal, although it is expressed that the payments or applications are for the education or support of the beneficiary, and although the amount is no more than is reasonable for his education and support, the beneficiary can transfer his interest and his creditors can reach it, except so far as a valid provision for forfeitures for alienation or restraint on alienation has been imposed as stated in §§ 150, 152 and 153."

■ See *Martin, Trustee* v. *Davis* (1882), 82 Ind. 38 on 40.

Again, in § 157 in Restatement of the Law of Trusts it is stated:

"Although a trust is a spendthrift trust or a trust for support the interest of the beneficiary can be reached in satisfaction of an enforceable claim against the beneficiary, (a) by the wife or child of the beneficiary for support, or by the wife for alimony; . . . ."

It is well settled in Indiana that a judgment for alimony is not a "debt growing out of, or founded upon a contract, express or implied" and that a debtor ■■ cannot claim exemption of any property from execution upon such a judgment. *Menzie* v. *Anderson* (1879), 65 Ind. 239; *Gilchrist* v. *Cotton* (1925), 83 Ind. App. 415, 148 N. E. 928. Therefore, we conclude that the net income of said farm in the hands of the trustee, or the beneficiary after the same has been paid by the trustee, is subject to seizure in satisfaction of appellee's judgment for alimony.

As heretofore stated, this is a statutory proceedings instituted and prosecuted to final judgment pursuant to §§ 2-4401 to 2-4406, Burns' 1933 (Supp.). The ▮ judgment was rendered pursuant to the authority conferred in § 2-4406, *supra*, which section reads in part as follows:

"Upon the hearing, the judge of the court may order any property, income or profits, of the judgment debtor, *not exempt from execution,* in the hands either of himself or of any other person, . . . to be applied to the satisfaction of the judgment, . . . *and the judge may order that the judgment or execution shall be a continuing lien upon the income or profits of the judgment debtor in the hands either of himself or any other person,* . . . to the extent that such income or profits are not exempted by law: Provided, *Such lien shall not exceed ten (10) per centum of such income or profits . . . ."*
(Our italics.)

This is the only statute in Indiana and the only law which has been called to our attention, which authorizes the trial court to enter the judgment attempted to be entered in this proceedings. Under the express provisions of this statute, the court was only authorized and empowered to enter an order or judgment directing that appellee's judgment should be and constitute a continuing lien upon 10% of the net income each year in the hands of the trustee or the judgment debtor, Earl Glendon Higgins, and such order or decree could be effective only after it had been served upon the person indebted to the judgment debtor. The judgment as rendered herein was, and is, erroneous, and beyond the power and authority of the trial court to enter. Further, we are of the opinion that the question as to the validity of the order and decree directing that 50% of the

net income of the trust fund be paid to the Clerk of the Court in satisfaction of appellee's judgment is properly presented by the assignment in the motion for a new trial that the finding and decision of the trial court is contrary to law. *Baker* v. *Pritchard* (1935), 100 Ind. App. 509, 194 N. E. 781; *Gaines* v. *Taylor* (1933), 96 Ind. App. 378, 185 N. E. 297. There was no judgment or finding in appellee's favor to the effect that she was entitled to recover a lump sum, or a liquidated amount, and for this reason an assignment in the motion for new trial that there was "error in the assessment of the amount of recovery, the same being too large," would not present any question for review as to the validity of the court's finding and order making appellee's judgment a continuing lien upon the net income and directing the payment of 50% thereof to the satisfaction of said judgment.

Finally, a motion to modify the judgment would not have reached the error in the court's finding and decision. This could only be reached by the assignment that the finding and decision is contrary to law, as was done in this case.

Judgment is reversed with directions to the trial court to restate its findings and decree in conformity with the views stated in this opinion.

Royse, C. J. and Bowen, J., not participating.

NOTE.—Reported in 63 N. E. (2d) 207.