**UNITED STATES of America, Plaintiff,**

v.

**Howard S. GRIMM, Jr. and Russell Kruse, as Personal Administrator of the Estate of Howard S. Grimm, Deceased, Defendants.**

**No. 1:94–CV–95.**

United States District Court,
N.D. Indiana,
Fort Wayne Division.

Oct. 26, 1994.

**1306**

Douglas W. Snoeyenbos, U.S. Dept. of Justice, Washington, DC, for plaintiff U.S.

Howard S. Grimm, Jr., pro se.

Kurt B. Grimm, John M. Haecker, Grimm and Grimm, Auburn, IN, for defendant Russell Kruse, Personal Adm'r of Estate of Howard S. Grimm.

### ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court on Defendant Russell Kruse's (hereinafter: "Kruse") Motion for Certification of Question of State Law to Supreme Court of Indiana filed on July 26, 1994, and the United States of America's Motion for Summary Judgment against defendants filed on July 11, 1994. The United States of America filed its Response to Motion for Certification of Question of State Law to Supreme Court of Indiana filed on August 5, 1994, and supplemented that Response by Order of this court on August 17, 1994. Both defendant Kruse and defendant Howard S. Grimm, Jr. (hereinafter: "Grimm") filed Responses to the United States of America's Motion for Summary Judgment on July 26, 1994, and July 26, 1994, respectively. The United States of America filed its Reply to Kruse's Response on August 10, 1994, and filed its Reply to Grimm's Response on August 5, 1994. The court conducted a hearing in this matter on October 25, 1994.

Therefore, the matter is fully briefed and is ripe for decision. For the following reasons, defendant Kruse's Motion for Certification of Question of State Law to Supreme Court of Indiana is denied, and the United States of America's Motion for Summary Judgment is granted.

### FACTUAL & PROCEDURAL BACKGROUND

On July 1, 1991, a delegate of the Secretary of the Treasury made an assessment totalling $74,080.99 against Howard S. Grimm, Jr., for unpaid federal income tax, interest, and penalties for the year 1987. Notice of the assessment and demand for payment were then made upon Grimm. On July 29, 1991, a delegate of the Secretary of the Treasury made assessments totalling $103,272.53 against Grimm for unpaid federal income tax, interest, and penalties for the years 1988, 1989 and 1990. The assessment for the year 1988 totalled $42,118.99, the assessment for the year 1989 totalled $22,-938.51 and the assessment for the year 1990 totalled $38,215.03. Notice of the assessments and demand for their payment were then made upon Grimm.

Howard S. Grimm Sr. died testate in De-Kalb County, Indiana on March 4, 1991. His probated will makes provision for the distribution of his estate. The administration of the estate is pending and final distribution has not yet occurred.

The United States of America initiated this lawsuit on April 1, 1994, claiming Grimm owes the government the amounts assessed above. The government states the will of Howard S. Grimm, Sr., provided at Item V that Grimm was "given, devised, willed and bequeathed" an interest in the estate of Howard S. Grimm, Sr., including certain real property. The government further asserts that the amount of the assessments set forth above are continuing liens as of the dates of assessment upon all property and rights to property of Grimm, including his rights as beneficiary under the will of his father and any real property which passed to Grimm by reason of the death of his father.

The government states that subsequent to July 29, 1991, Russell Kruse, as Personal Administrator of the estate of Howard S. Grimm, Sr., sold certain real estate, an interest in which had passed to Grimm and which was subject to the liens described above. The government asserts the liens attached to the proceeds of the sale of the real property

as the liens had previously attached to the real property itself.

Kruse argues that Grimm has no interest in his father's estate at this time, and therefore, no government lien can attach. Kruse asserts Grimm must survive until the final distribution of the assets of the will before he is entitled to an interest under his father's will. Kruse also maintains that Howard S. Grimm, Sr.'s will automatically provides for the establishment of a discretionary spendthrift trust naming Grimm as beneficiary if Grimm's interest under the will is threatened by any diversion. Therefore, Kruse concludes, Grimm has no property interest in the corpus of the trust to which the government's lien can attach.

Grimm concedes that he is liable to the government for back taxes, interest and penalties, but asserts the amount of the assessments are incorrect in that he should be given credit for payments he allegedly made to the Internal Revenue Service.

The court shall first address Kruse's Motion for Certification, and shall then address the government's Motion for Summary Judgment and the arguments raised by defendants in opposition to that Motion.

### MOTION FOR CERTIFICATION

■ Kruse moves this court to certify the following state-law question to the Indiana Supreme Court:

> Whether and to what extent Howard S. Grimm, Jr. has an interest in property in the estate of his father, Howard S. Grimm to which a federal tax lien can attach?

Kruse asserts that the determination of whether a taxpayer has property or rights to property to which a tax lien can attach is a question of state law, citing *Aquilino v. United States,* 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960). The court agrees with the assertion that the determination of property rights to which a federal tax lien can attach is a matter of State law, but disagrees with Kruse's suggestion that the law is unclear in the State of Indiana as to when Howard S. Grimm, Jr. took an interest in his father's estate, thereby allowing a federal tax lien to attach. It is clear that Grimm re-ceived an immediate present fixed right of future enjoyment of a one-sixth interest in his father's estate. Accordingly, the court denies Kruse's Motion for Certification of Question of State Law to Supreme Court of Indiana.

### SUMMARY JUDGMENT

■ Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). However, Rule 56(c) is not a requirement that the moving party negate his opponent's claim. *Fitzpatrick v. Catholic Bishop of Chicago,* 916 F.2d 1254, 1256 (7th Cir. 1990). Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A scintilla of evidence in support of the non-moving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at ——, 106 S.Ct. at 2512; *In re Matter of Wildman,* 859 F.2d 553, 557 (7th Cir.1988); *Klein v. Ryan,* 847 F.2d 368, 374 (7th Cir.1988); *Valentine v. Joliet Township High School District No. 204,* 802 F.2d 981, 986 (7th Cir.1986). No genuine issue for trial exists "where the record as a whole could not lead a rational trier of fact to find for the nonmoving party." *Juarez v. Ameritech Mobile Communications, Inc.,* 957 F.2d 317, 322 (7th Cir.1992) (quoting *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

■ Initially, Rule 56 requires the moving party to inform the court of the basis for the motion, and to identify those portions of the "pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, which demonstrate the absence of a genuine issue of material fact, *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553. The non-moving party may oppose the motion with any of the evidentiary materials listed in Rule 56(c), but reliance on the pleadings alone is not sufficient to withstand summary judgment. *Goka v. Bobbitt,* 862 F.2d 646, 649 (7th Cir.1988); *Guenin v. Sendra Corp.,* 700 F.Supp. 973, 974 (N.D.Ind.1988); *Posey v. Skyline Corp.,* 702 F.2d 102, 105 (7th Cir.), *cert. denied,* 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983).

■ So that the district court may readily determine whether there are genuine issues of material fact, under Local Rule 56.1, the moving party is obligated to file with the court a "Statement of Material Facts" supported by appropriate citation to the record to which the moving party contends there is no genuine issue. In addition, the non-movant is obligated to file with the court a "Statement of Genuine Issues" supported by appropriate citation to the record all material facts to which the non-movant contends there are exists a genuine issue necessary to be litigated. *See, Waldridge v. American Hoechst Corp. et al.,* 24 F.3d 918 (7th Cir.1994). In ruling on a summary judgment motion the court accepts as true the non-moving party's evidence, draws all legitimate inferences in favor of the non-moving party, and does not weigh the evidence or the credibility of witnesses. *Anderson,* 477 U.S. at 249–251, 106 S.Ct. at 2511. Furthermore, in determining the motion for summary judgment, the court will assume that the fact as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the "Statement of Genuine Issues" filed in opposition to the motion. L.R. 56.1

■ Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. *Id.* The issue of fact must be genuine. Fed. R.Civ.P. 56(c), (e). To establish a genuine issue of fact, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356; *First National Bank of Cicero v. Lewco Securities Corp.,* 860 F.2d 1407, 1411 (7th Cir.1988). The non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Id.* A summary judgment determination is essentially an inquiry as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–252, 106 S.Ct. at 2512. Finally, the court notes that, "[i]t is a gratuitous cruelty to parties and their witnesses to put them through the emotional ordeal of a trial when the outcome is foreordained" and in such cases summary judgment is appropriate. *Mason v. Continental Illinois Nat'l Bank,* 704 F.2d 361, 367 (7th Cir.1983).

### Grimm's Interest Vested Upon the Death of his Father

The government asserts that as a beneficiary under the will of Howard S. Grimm, Sr., Grimm became the owner of an interest in real property upon his father's death on March 4, 1991. Thus, the federal tax liens attached to Grimm's interest in that real property when the assessments were made on July 1 and July 29, 1991.

Kruse cites two (2) provisions in the will for the proposition that Grimm has no interest in his father's estate at this time as Grimm has not fulfilled the necessary contingencies entitling him to his interest. Thus, Kruse asserts, there is no interest to which the government's liens can attach. First, Kruse cites Item V of the will which states in pertinent part:

... then my entire estate, including the proceeds of Howard S. Grimm Trust administered by Fort Wayne National Bank,

shall be divided into six equal parts and the following persons and Trustee, to wit: my son, Howard S. Grimm, Jr.; my son, Edgar A. Grimm; Fort Wayne National Bank, Fort Wayne, Indiana, as Trustee for my daughter, Helen J. Grimm Norment, who sometimes refers to herself as Helen J. Cameron; my son, Lloyd R. Grimm; my son, John C. Grimm; and my son, James L. Grimm, are hereby given, devised, willed and bequeathed the one-sixth equal part of my said estate. My Personal Representative, hereinafter named, shall disburse the one-sixth part of my said estate to the Fort Wayne National Bank under the terms of such agreement which I have heretofore entered into with said bank, as Trustee for my daughter, Helen J. Grimm Norment, who sometimes refers to herself as Helen J. Cameron. Each of the other persons shall received their undivided one-sixth part of my said estate and it shall be paid over to them at the time of the final settlement of my said estate, or partial settlement may be made by Order of Court at an earlier date, if the Court shall approve the same.

Second, Kruse cites Item VIII, paragraph nineteen (19) which states:

In the event of the death of any of my sons prior to the ultimate distribution of his respective interest in my estate, then his share of said estate shall go to the surviving children, per stirpes, of such deceased son of mine.

Kruse asserts that the final sentence of Item V and Item VIII paragraph nineteen (19) demonstrate Howard S. Grimm, Sr.'s intent that Grimm not receive any interest in the estate until the time of the final settlement or distribution of the estate. The court is not persuaded by Kruse's argument.

■■■ The court finds Grimm's interest in his father's estate to have vested on his father's death on March 4, 1991. A vested estate or interest under a will exists when there is an immediate right of present enjoyment, or a present fixed right of future enjoyment in an ascertained person. 29 I.L.E. Wills § 271. The plain language of the will at Item V indicates that Grimm received a present fixed right of future enjoyment of a

one-sixth interest in his father's estate. Grimm was "given, devised, willed and bequeathed" outright a one-sixth equal part of his father's estate. Although Howard S. Grimm, Sr. provided for Grimm's sister to receive an immediate right of present enjoyment of her interest, Grimm and his brothers must wait until the final settlement of the estate before they begin to enjoy their share respective interest. Although under Item V and Item VIII paragraph nineteen (19) of the will Grimm must wait until the final settlement of the estate before he may enjoy his interest, his interest was vested at the time of his father's death.

■■■ Moreover, under Indiana rules of construction of wills, the court finds Grimm's one-sixth interest to have vested upon his father's death. The law favors early vesting of estates. *Heilman v. Heilman,* 129 Ind. 59, 28 N.E. 310, 311 (1891). "It is familiar law that, in the absence of a clear manifestation of the intention of the testator to the contrary, estates shall be held to vest at the earliest period. The intent to postpone the vesting of the estate must be clear and manifest, and must not arise by mere inference or construction." *Id.* A testamentary devise may be vested in interest although the possession or actual enjoyment is postponed to a future time. *Moore v. Gary,* 149 Ind. 51, 48 N.E. 630 (1897). When an interest or estate has been given in clear terms in one clause of a will, such interest or estate cannot be taken away or cut down by a subsequent clause which is not equally clear and decisive of the testator's intent. *In re Carney's Estate,* 171 Ind. 379, 86 N.E. 400, 402 (1908).

Words in a will postponing estates are generally construed to refer to the beginning of possession and enjoyment of the estate and not the vesting thereof, *Heilman,* 28 N.E. at 311, and in determining the question of whether a postponement or contingency relates to a possession or enjoyment of the devise rather than to the devise itself, the courts will, in accordance with the general rule favoring vested estates, construe the postponement or contingency to relate to the possession or enjoyment rather than to the devise itself, if a contrary intention is not clearly mani-

fested, *Aldred v. Sylvester*, 184 Ind. 542, 111 N.E. 914, 916 (1916).

29 I.L.E. Wills § 273.

Applying the above rules of construction, the court cannot find a clear and manifest intent of the testator to postpone the vesting of Grimm's interest. Item V of the will clearly vests Grimm with a one-sixth interest in his father's estate coupled only with a postponement of enjoyment until the estate is finally settled. *See, Quinn v. Peoples Trust & Savings Co.*, 223 Ind. 317, 60 N.E.2d 281, 288 (1945). Item VIII, paragraph nineteen (19), speaks only to the real property of which Howard S. Grimm, Sr. was seized at the time of his death, and how it is to be open to purchase by option by certain beneficiaries in the will or ultimately distributed if no one exercises the option. Pursuant to the rules of construction discussed above and specifically the rule announced in *In re Carney's Estate*, 171 Ind. 379, 86 N.E. 400, 402 (1908), the court cannot find an intent on the part of Howard S. Grimm, Sr. to postpone the vesting of Grimm's interest in the estate. Grimm is vested in fee simple subject to complete divestment if he fails to live until the ultimate distribution of his respective interest. *See, Matter of Estate of Spanley*, 458 N.E.2d 289, 291 (Ind.App.1984) (holding once the beneficiary satisfied the condition of surviving the testator by six (6) months she could not be *divested* of her share of the estate); *see also*, Roger A. Cunningham et al., *The Law of Property* § 2.8 (1984).[1] The court finds Grimm to have taken a vested interest in his father's estate at the time of his father's death on March 4, 1991.

### The Spendthrift Clause is Ineffective Against the Liens

Having determined that Grimm is presently vested with a one-sixth interest in his

deceased father's estate, the court must next determine whether the government has a valid lien upon that interest.

 A federal tax lien arises on the date the taxes are assessed and attaches to all property and rights to property of the taxpayer. 26 U.S.C. §§ 6321, 6322.[2] The broad language of the statute indicates Congress meant to reach every interest in property a taxpayer may have. *United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 720, 105 S.Ct. 2919, 2924, 86 L.Ed.2d 565 (1985). The court must look to state law to determine what property or rights to property the taxpayer possesses to which the federal lien may attach. *Aquilino v. United States*, 363 U.S. 509, 512–515, 80 S.Ct. 1277, 1279–1281, 4 L.Ed.2d 1365 (1960).

As set forth supra, this court has already determined, according to the laws of the State of Indiana, that Grimm has a vested interest in the estate of his deceased father which came into existence on March 4, 1991. Thus, Grimm had a right to property to which the federal liens attached on July 1, 1991, and July 29, 1991. The only question left unanswered is whether any obstacle exists that prevents the government from attaching its lien to Grimm's interest in his deceased father's estate.

 Kruse argues that Item XXXVI of Howard S. Grimm, Sr.'s will prevents the federal tax lien from attaching to Grimm's interest under the will. Kruse asserts that that provision is of a type commonly referred to as a "Spendthrift Clause" which dictates that a beneficiary's inheritance shall not be subject to claims of creditors. Item XXXVI states in pertinent part:

> States upon all property and rights to property, whether real or personal, belonging to such person.
> 26 U.S.C. § 6322 states:
> Unless another date is specifically fixed by law, the lien imposed by section 6321 shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed (or a judgment against the taxpayer arising out of such liability) is satisfied or becomes unenforceable by reason of lapse of time.

---

**1.** The court notes Kruse argues that Grimm has no interest in his father's estate at this time, but fails to identify what interest, if any, Grimm has in his father's estate, either in the form of a present interest or a future interest.

**2.** 26 U.S.C. § 6321 states:
 If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United

I hereby will and direct that no interest, inheritance, or option of any beneficiary of my estate shall be subject to any debt, claim, demand, obligation, anticipations, assignments, sales, pledges, contracts or liabilities of any beneficiary of my estate and no execution, attachment, garnishment, or other process shall ever issue against such inheritance of any beneficiary of my estate by creditors of said beneficiary, or by anyone. If the Personal Representative shall believe that the interest of a beneficiary or beneficiaries is threatened to be diverted in any manner from the purposes of my said Last Will and Testament, or any Codicil or Codicils thereto, or Trusts created thereunder, then the inheritance, property, or Trust that would have gone to said beneficiary under this will shall go to and be held by the The Auburn State Bank, Auburn, Indiana, as Trustee for said beneficiary of this will and said Trustee shall apply payments in its discretion and in such manner as shall contribute to the maintenance, comfort, and necessities of the beneficiary. Whenever the Trustee shall be satisfied that such diversion is no longer effective or threatened, it shall distribute the principal and income of said Trust to the beneficiary for whom it is holding said inheritance ...

Kruse asserts that the above Item provides for the establishment of a discretionary spendthrift trust in case he believes Grimm's interest under the will is threatened with diversion and prevents the government from attaching its lien to Grimm's interest because Grimm has no property interest in the trust.[3]

However, at the present time,[4] no trust has been established. Grimm is presently vested with a present fixed right of future enjoyment of a one-sixth interest in his father's estate. Thus, per the ruling of this court, *infra,* the government's liens are foreclosed upon Grimm's one-sixth interest in his father's estate upon the date of entry of this

Order. Because no trust exists, Kruse is precluded from arguing that the trust relieves Grimm of any interest in his father's estate upon which the government can attach or foreclose its liens.

Moreover, even if a trust existed on the date of entry of this Order naming Grimm as beneficiary and The Auburn State Bank as trustee, the court finds that the operative language in Howard S. Grimm, Sr.'s will does not provide for the establishment of a spendthrift trust or a discretionary trust, but for the establishment of a support trust.

■ A spendthrift trust is one in which the beneficiary is unable to transfer, assign, or alienate his right to future payments of income or principal, and which provides the beneficiary's creditors are unable to subject the beneficiary's interest to the payment of their claim while in the hands of the trustee. *Brosamer v. Mark,* 540 N.E.2d 652 (Ind.App.1989). *See also,* I.C. 30–4–3–2. There are three requirements for a trust to be a spendthrift trust. First, the settlor may not be a beneficiary of the trust. Second, the beneficiary must not have any present dominion or control over the plan corpus. Third, the trust must contain an anti-alienation clause which prevents the beneficiary from voluntarily or involuntarily transferring his interest in the trust. *Matter of Jones,* 43 B.R. 1002 (N.D.Ind.1984).

The third requirement is lacking in this case. The will states that no interest devised under the will is to be subjected to the creditors of any beneficiary, and then states that if an interest of any beneficiary is threatened, the interest is to be placed in trust. The subsequent language which actually establishes the trust fails to contain any provision that prohibits the *beneficiary* from voluntarily or involuntarily transferring his interest in the trust. Because the language establishing the trust fails to restrict the

---

**3.** "In general, a spendthrift trust is one in which the beneficiary is unable to transfer, assign, or alienate his right to future payments of income or principal, and which provides the beneficiary's creditors are unable to subject the beneficiary's interest to the payment of their claims while in the hands of the trustee." *Brosamer v. Mark,* 540 N.E.2d 652, 654–55 (Ind.App.1989).

**4.** During the October 25, 1994 hearing, Mr. Kurt B. Grimm informed the court that no trust had been created naming Howard S. Grimm, Jr. as beneficiary and The Auburn State Bank as trustee.

beneficiary's ability to transfer his interest in the trust to another party or creditor while the interest is under the control of the trustee, the trust is not a spendthrift trust.

■ Furthermore, the court finds that the trust to be created under the terms of the will is a support trust. The law applicable is clearly stated in *Clay v. Hamilton,* 116 Ind.App. 214, 63 N.E.2d 207 (1945) which adopted the Restatement of Trusts § 154:

> Except as stated in § 156 and 157, if by the terms of a trust it is provided that the trustee shall pay or apply only so much of the income and principal or either as is necessary for the education or support of the beneficiary, the beneficiary cannot transfer his interest and his creditors cannot reach it.

*Clay v. Hamilton,* 116 Ind.App. 214, 63 N.E.2d 207, 210–11 (1945).

Under the terms of the will, the trust is to provide for the "maintenance, comfort, and necessities of the beneficiary." The use of this phrase in the establishment of the trustee's duties indicates the settlor's intent to ensure that Grimm had a means of support for the necessities of life. Hence, the proposed trust is a trust for support.

The Restatement provides further:

> Although a trust is a spendthrift trust or a trust for support, the interest of the beneficiary can be reached in satisfaction of an enforceable claim against the beneficiary,
>
> (d) by the United States or a State to satisfy a claim against the beneficiary.

Restatement of Trusts (Second) § 157 (1959).

Thus, through the operation of the Restatement, the government would be entitled to assert its lien against Grimm's interest under the terms of the support trust.[5]

■ In addition, even if the court were to find that the trust to be created under the terms of the will was to be a spendthrift trust or a support trust, the government would be entitled to foreclose upon whatever interest Grimm received under the terms of the trust *by operation of federal law.* A valid spendthrift trust does not defeat attachment and foreclosure of a federal tax lien. *First Northwestern Trust Co. v. Internal Rev. Serv.,* 622 F.2d 387, 390 (8th Cir.1990) (holding the income from a spendthrift trust is not immune from federal tax liens even when the elements of a spendthrift trust are combined with provisions granting discretionary powers of distribution to the trustee); *Leuschner v. First Western Bank and Trust Co.,* 261 F.2d 705, 707–08 (9th Cir.1958) (citing Restatement, Trusts, § 157); *United States v. Dallas Nat'l Bank,* 152 F.2d 582, 585–86 (5th Cir.1945) (holding that the federal tax laws are part of the supreme law of the land and when in conflict state laws and provisions of a will must yield); *United States v. Taylor,* 254 F.Supp. 752 (N.D.Cal. 1966); *Clay v. Hamilton,* 116 Ind.App. 214, 63 N.E.2d 207 (1945). Thus, the government would be entitled to attach and foreclose its lien upon any income Grimm would receive as beneficiary under the trust.

■ Finally, to the extent the "Spendthrift" clause could be construed as a "forfeiture" clause which would divest Grimm of his interest upon a threatened diversion, such forfeiture clauses are against public policy and are inapplicable against the United States and a federal tax lien. *United States v. Mitchell,* 403 U.S. 190, 91 S.Ct. 1763, 29 L.Ed.2d 406 (1971); *United States v. Comparato,* 22 F.3d 455 (2nd Cir.1994); *United States v. Riggs Nat'l Bank,* 636 F.Supp. 172 (D.D.C.1986); *United States v. Taylor,* 254 F.Supp. 752 (N.D.Cal.1966). Once the federal lien attached, a subsequent renunciation or forfeiture under state law is ineffective against the federal lien.

In its Complaint, the United States of America requests the court to enter judgment in its favor in the amount of $198,610.39 and foreclose on Grimm's interest in his father's estate. In paragraph one (1) of his three (3) paragraph Answer, Grimm admits to owing the above amount. In paragraph three (3), Grimm states that he paid approxi-

---

5. The court in *Clay* also relied upon § 157 of the Restatement of Trusts for the proposition that a beneficiary's interest in a spendthrift or support trust can be reached by a certain class of credi-tors. The Restatement of Trusts (Second) § 154 and § 157 relied upon by this court, do not differ from the Restatement of Trusts relied upon by the court in *Clay.*

mately $26,000 to $28,000 to the Internal Revenue Service (hereinafter: "IRS") in the early 1980's, but that the IRS refuses to credit these funds against his present charges consisting of taxes, penalties and interest claimed in this suit.

In his Response, Grimm requests that "any judgment rendered against him be only in the amount of $155,604.52 minus credits for payments in the amount of $262.50 and minus the amount together with interest presently held by the Internal Revenue Service promised him as a credit against his total tax liability." Grimm makes this statement based upon an alleged acknowledgment by the Special Problems and Resolutions Section of the IRS that it has a payment from Grimm of approximately $28,000, and based upon a letter he received from plaintiff's attorney dated June 24, 1994, which Grimm maintains demonstrates his total tax liability to be $177,353.52, minus a credit of $12,000 for the year 1989, and minus a credit of $9,749.00 plus several payments of $262.50 each for the year 1987.

Grimm's reliance upon the June 24, 1994, letter as representative of the final amount owed to the United States of America is misplaced. The final sentence of the letter states, "Penalties and interest continue to accrue on your liabilities as provided by law." The Internal Revenue Code, 26 U.S.C. § 6601, provides that interest on unpaid taxes accrues from the last date prescribed for payment at the underpayment rate prescribed by 26 U.S.C. § 6621. Furthermore, interest compounds daily. 26 U.S.C. § 6622. The interest and penalties accrue by operation of statute, and thus, the amount owed is a matter of law and is not something the government must demonstrate as an evidentiary matter. *See, United States v. Schroeder,* 900 F.2d 1144, 1150, n. 5 (7th Cir.1990).

As to the approximately $28,000 of which Grimm asserts the IRS promised him as a credit against his total tax liability, Grimm has failed to produce any evidence that such a payment was ever made. Furthermore, Grimm indicated in open court that the payment in question does not relate specifically to the federal income taxes at issue in this lawsuit. Grimm must show that he intended for the payment to be applied to one of the tax years at issue before the amount of the judgment against him for those years could be reduced. Moreover, to the extent Grimm is requesting a credit or refund, he has not filed an administrative claim, and therefore, cannot assert a counterclaim. 26 U.S.C. § 7422; *Goulding v. United States,* 929 F.2d 329 (7th Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 188, 121 L.Ed.2d 132.

In any event, as the government indicated in open court, Grimm is entitled to a credit for any payments he has made to the IRS once Grimm proves the existence of the payments to the satisfaction of the IRS. However, the issue of those credits is not at issue before this court.

## CONCLUSION

For all of the foregoing reasons, plaintiff's Motion for Summary Judgment against defendants filed on July 11, 1994 is GRANTED.

It is further ORDERED that judgment is entered with respect to the assessments described in paragraphs six (6) and seven (7) of the complaint in favor of the United States of America and against Howard S. Grimm, Jr. in the amount of $198,610.39 plus accrued interest and other additions pursuant to law accruing after March 1, 1994.

It is further ORDERED that the United States of America has valid and subsisting liens on all property and rights to property belonging to Howard S. Grimm, Jr., including the proceeds of the sale of the real estate in which Howard S. Grimm, Jr. held an interest which was sold by Russell Kruse as Personal Administrator of the Estate of Howard S. Grimm, Sr., deceased, said proceeds now being held by Russell Kruse as Personal Administrator of the Estate of Howard S. Grimm, Sr., and Howard S. Grimm, Jr.'s interest as a beneficiary of the Estate of Howard S. Grimm, Sr., deceased.

It is further ORDERED that the United States of America's federal tax liens are foreclosed upon the interest of Howard S. Grimm, Jr., in the Estate of Howard S. Grimm, Sr., deceased, and on the proceeds of

the sale of the real property held by Russell Kruse as Personal Administrator of the Estate of Howard S. Grimm, Sr., deceased, and that the proceeds of the sale of the real property held by Russell Kruse as Personal Administrator of the Estate of Howard S. Grimm, Sr., deceased, and any distribution to or on behalf of Howard S. Grimm, Jr., from the Estate of Howard S. Grimm, Sr., deceased, shall first be paid to the United States of America in an amount sufficient to satisfy the federal tax liens.